UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

    Plaintiff,

v.

SIRENNA LANDFAIR, BRIAN
STRICKLIN, ALINDA FLORECK,[1]
VICTORIA HALLETTS, MICHIGAN
DEPARTMENT OF CORRECTIONS,
and CORIZON HEALTH INC.,

    Defendants.

_____/

Case No. 2:22-cv-10060
District Judge Gershwin A. Drain
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22)

### I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act. Plaintiff Scott Sedore (Sedore), proceeding *pro se*, claims that Defendants, Sirenna Landfair (Landfair), Brian Stricklin (Stricklin), Alinda Florek (Florek), Victoria Halletts (Halletts), the Michigan Department of Corrections (MDOC), and Corizon

---

[1] It appears from the motion papers that this party's surname is actually spelled "Florek." *See* ECF No. 22, PageID.117 n.1. Accordingly, the undersigned will refer to her as Florek in the body of this Report and Recommendation.

1

Health Inc. (Corizon), retaliated against him for complaining about the healthcare he received while incarcerated. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 24).

Before the Court is a motion for summary judgment based on a failure to exhaust filed by Landfair, Stricklin, and the MDOC.[2] (ECF No. 22). For the reasons that follow, the undersigned RECOMMENDS that the motion be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends that the motion be granted as to Stricklin and the motion be denied as to Landfair, Florek, and the MDOC.

## II. Background

The following facts are gleaned from the complaint.

The individual defendants are all health care professionals employed by either the MDOC or Corizon who work at the G. Robert Cotton Correctional Facility (JCF). *See* ECF No. 1. Landfair is the Health Unit Manager, Stricklin is a nursing supervisor, Florek is a registered nurse, and Halletts is a medical doctor. (*Id.*, PageID.2-3).

---

[2] The motion includes the following footnote: "Florek has since left MDOC employment and has not been served; it appears that the arguments made in this motion apply to her also." (*Id.*, PageID.117 n.1). Accordingly, the undersigned will also address whether Florek is entitled to summary judgment at this time.

Sedore says that he has a long history of grieving medical care received while incarcerated with the MDOC and that Defendants were "all well aware of [his] past fight to protect [his] 8th Amendment civil rights regarding [his] 'ongoing' 'deliberate indifference' claims. . . ." (ECF No. 1, PageID.21-24).

This lawsuit arises out of an incident that happened on June 16, 2021. (*Id*., PageID.21-23). On that date, Landfair along with the other named defendants placed Sedore in segregation after they alleged Sedore was harming himself. (*Id*., PageID.22-23). Sedore says that the injury Landfair observed (a laceration on his heel) was caused when he cut himself on his wheelchair. (*Id*., PageID.23). When Sedore learned he would be placed in segregation, he begged and pleaded with Landfair to change her mind. (*Id*., PageID.27).

When he was first placed in segregation, Defendants failed to ensure that Sedore's assigned "cage" was large enough to accommodate his wheelchair. (*Id*., PageID.24-25). Squeezing into the tight space and being confined in his wheelchair "caused [Sedore] debilitating pain." (*Id*., PageID.25). After several hours in the "cage," Sedore was evaluated by a mental health professional, Dr. Jones, who determined that Sedore could be safely returned to his normal housing unit. (*Id*., PageID.26).

The following day, Sedore spoke to Dr. Jones about the incident. (*Id*., PageID.26). Dr. Jones told Sedore that placing him in segregation because of a

3

scabbed over scrape on his heel was "ridiculous." (*Id*.). Dr. Jones also told Sedore that his treatment appeared retaliatory. (*Id*.).

As a result of being placed in segregation, Sedore missed his law library appointment time. (*Id*., PageID.26-27). Landfair was aware Sedore had an appointment when she decided to place him in segregation. (*Id*., PageID.27). Missing his appointment caused Sedore a week-long delay in his ability to file a lawsuit in district court. (*Id*., PageID.26-27).

### III. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of

fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Sedore is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-513 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV. Analysis

A. Legal Standard - Exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that

5

the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections'

6

procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130(R) (underscoring omitted).

Furthermore, MDOC Policy Directive 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a

7

> Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.) If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.) If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.) The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC Policy Directive 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

B.  Application

It is undisputed that Sedore filed a grievance (JCF-21-06-1026-28i) regarding the June 16, 2021 incident. (Grievance, ECF No. 22-3, PageID.195-199). In his grievance, Sedore says that Landfair, Stricklin, and Florek all accused

8

him of "being suicidal and trying to harm [himself]." (*Id.*, PageID.199). Because of these accusations, Sedore was handcuffed and taken to a segregation cell. (*Id.*).

Sedore filed his Step I grievance on June 21, 2021. (*Id.*, PageID.197). It was rejected for the following reason: "The grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance. . . ." (*Id.*, PageID.198). The rejection was upheld at both Step II and Step III. (*Id.*, PageID.195). The "Step III Grievance Response Form" is dated February 1, 2022. (*Id.*). Sedore filed his complaint in this lawsuit on January 11, 2022. (ECF No. 1).

Landfair, Stricklin, the MDOC, and Florek argue that Sedore failed to exhaust his claims against them for two reasons: (1) he failed to attempt to resolve his issues with them before filing a Step I grievance, and (2) he failed to complete the Step III process for his grievance before filing the instant lawsuit. (ECF No. 22, PageID.124-125).

        1.      Sirena Landfair and Brian Stricklin

As to Sedore's alleged failure to attempt to resolve his issues with Landfair and Stricklin before filing a Step I grievance, the undersigned finds that there is an issue of material fact as to Landfair only.

In his verified complaint, Sedore says that he begged and pleaded with Landfair about her decision to place him in segregation on June 16, 2021. *See* ECF No. 1, PageID.27, stating that "Landfair was well aware, because I made her

9

aware, when I was begging and pleading with her in 'JCF' healthcare services Dept on 6/16/21 – to please not put in in segregation … I stressed to [] Landfair that I would miss my call-out to the 'JCF' Law Library that I had in less than an hour.") If true, this allegation creates a genuine dispute over whether Sedore attempted to informally resolve the issue with Landfair. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) ("[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."). This informal effort occurred on the day of the incident and so it fell within the permitted two-day period for informal resolution. Sedore filed the relevant grievance on June 21, 2021, which was five days after his informal effort to resolve the issue. The policy directive gives a prisoner five days after an informal effort to file a grievance. Sedore has thus created an issue of material fact regarding whether he informally addressed the subject of his later grievance with Landfair.

  The same cannot be said of Stricklin. Sedore does not indicate in his complaint that he spoke to Stricklin on June 16, 2021, or on any day thereafter regarding the decision to place Sedore in segregation. Therefore, Sedore has not shown that he attempted an informal resolution with Stricklin before filing his grievance. Thus, his claim against Stricklin has not been properly exhausted.

Defendants' second argument is that Sedore failed to complete the Step III process for his grievance before filing the instant lawsuit. Two relevant facts are undisputed. First, Sedore filed his complaint on January 11, 2022. (ECF No. 1). Second, the "Step III Grievance Response Form" is dated February 1, 2022. (ECF No. 22, PageID.195). However, Landfair and Stricklin fail to state in their brief or attach any evidence indicating on what date Sedore *initiated* his Step III appeal. Sedore, however, does.

Attached as Exhibit 4 to Sedore's complaint is a "Disbursement Authorization/Catalog Order Form" that shows Sedore requested his Step III appeal to be mailed on July 21, 2021. (ECF No. 1, PageID.43). The form was later stamped with the date July 22, 2021. (*Id*.). The MDOC is "generally" supposed to respond to a Step III appeal within 60 days. MDOC Policy Directive 03.02.130 ¶ II. Sixty days from July 22, 2021, is September 20, 2021. As noted above, the MDOC did not respond to the Step III appeal until February 1, 2022.

"Where an inmate files a civil action in federal court before pursuing to completion his available administrative remedies, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies." *Johnson*, 2021 WL 3476449, at *3 (collecting cases). However, there is an exception to this general principle. "[I]f a prisoner files a lawsuit only after prison officials failed to timely respond to his grievances, dismissal on exhaustion

11

grounds may not, depending on the circumstances, be appropriate." *Id.*; *see also Fulkerson v. Washington*, No. 1:16-cv-537, 2016 WL 7337157, at *2-4 (W.D. Mich., Nov. 3, 2016). Without this exception to the general rule of completion,

> prison officials could potentially obtain the dismissal of every lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance and simply wait until the prisoner eventually files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process.

*Johnson*, 2021 WL 3476449, at *3.

Here, Sedore has presented evidence indicating that his Step III appeal was mailed on or around July 22, 2021. The MDOC, however, did not issue its Step III decision until February 1, 2022, well after the passage of 60 days. The MDOC's actions in this case are illustrative of the problems highlighted by the *Johnson* court. As the court in *Johnson* noted, a finding that a prisoner-plaintiff did not exhaust because the MDOC failed to timely respond to a Step III appeal is unfair to prisoners who have properly adhered to the grievance process set forth by the MDOC. Accordingly, the undersigned rejects Landfair and Stricklin's second argument that Sedore failed to complete the entire grievance process before filing the instant lawsuit.

In sum, the undersigned recommends that the Court grant summary judgment to Stricklin and dismiss him from the case without prejudice because Sedore did not attempt to informally resolve his issues with Stricklin before filing a Step I grievance. The undersigned also recommends that summary judgment be denied as to Landfair because there is a genuine issue of material fact as to whether Sedore exhausted his claim against her by attempting an informal resolution.[3]

### 2. MDOC

The MDOC also moves for summary judgment on the basis of exhaustion. This argument does not carry the day. Judges from both this district and the Western District of Michigan have denied motions for summary judgment on the basis of exhaustion brought by the MDOC. In *Annabel v. Mich. Dep't of Corr.*, No. 1:18-CV-914, 2020 WL 919700, at *1 (W.D. Mich. Feb. 26, 2020), the court explained:

> The MDOC prison grievance policy directive does not explicitly address whether a grievance can be filed against the MDOC. Although the grievance policy requires a prisoner to include "names of all those involved," it also requires a prisoner to "attempt to resolve the issue

---

[3] Landfair would be entitled to a bench trial on the issue of exhaustion if the district court adopts the undersigned's recommendation. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). To prevail at such a bench trial, Landfair would be required to show that Sedore failed to exhaust his administrative remedies by a preponderance of the evidence. *Id*. at 677; *see also Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

> with the staff member" unless prevented by circumstances beyond his control. [MDOC Policy Directive 03.02.130 (effective July 9, 2007), ¶ P.] The policy also states that a prisoner generally cannot grieve the content of policy or procedure. Id. at ¶ F. The Court is not convinced that the prison grievance system requires a prisoner to name the MDOC in the grievance. Ultimately, Defendants bear the burden of establishing that Plaintiff failed to exhaust his administrative remedies. *Napier v. Laurel Cnty*, 636 F.3d 218, 225 (6th Cir. 2011). They have not met that burden in this case.

(internal footnote omitted).

Similarly, in *Ford v. Jindal*, No. 19-13207, 2020 WL 7391293, at *3 (E.D. Mich. Dec. 1, 2020), *report and recommendation adopted*, 2020 WL 7389110 (E.D. Mich. Dec. 16, 2020), the MDOC made the same argument on exhaustion, contending that the prisoner-plaintiff had not exhausted his claims against the MDOC because he did not name the MDOC as a party in his grievances. The magistrate judge, relying on *Annabel*, stated that the MDOC's exhaustion argument had been "summarily rejected" by the *Annabel* court and recommended that the MDOC remain as a party. *Id*. The MDOC did not object. *Ford*, 2020 WL 7389110, at *1. The district court adopted the magistrate judge's recommendation and kept the MDOC as a party to the case. *Id*.

Following the decisions in *Annabel* and *Ford*, the MDOC has not met its burden to establish Sedore failed to exhaust his administrative remedies. As such, the undersigned recommends denying the MDOC's motion for summary judgment on the grounds of exhaustion.

14

3. Alinda Florek

Florek's relationship to the motion for summary judgment is unusual. She is not named as a party moving for summary judgment; however, she is mentioned in a footnote to the brief accompanying the motion. This footnote states, "Florek has since left MDOC employment and has not been served; it appears that the arguments made in this motion apply to her also." (ECF No. 22, PageID.117 n.1).

Putting aside the fact that the argument is contained in a single sentence in a footnote, the undersigned does not believe that Florek is entitled to summary judgment at this time. First, the assistant attorney general, Joseph Y. Ho, who is representing Landfair, Stricklin, and the MDOC has not filed an appearance on Florek's behalf. *See* ECF No. 20 (appearance of counsel for Landfair, Stricklin, and the MDOC). Second, the footnote incorrectly states that Florek has not been served. The docket reflects that Florek was personally served on March 25, 2022, (ECF No. 10). Additionally, it is unclear whether Florek authorized Mr. Ho to make any arguments on her behalf. Accordingly, if Florek chooses to do so, she may file a motion for summary judgment without first obtaining leave of the Court.[4]

---

[4] E.D. Mich. LR 7.1(b)(2) requires leave of court for parties seeking to file more than one motion for summary judgment. Because the undersigned has not considered the merits of whether Florek is entitled to summary judgment, any such motion would be her first.

V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that the pending motion for summary judgment, (ECF No. 22), be GRANTED IN PART and DENIED IN PART. Specifically, it is RECOMMENDED that the motion be GRANTED as to Stricklin, DISSMISSING him WITHOUT PREJUDCE, and the motion be DENIED as to Landfair, Florek, and the MDOC.


Dated: August 22, 2022           s/Kimberly G. Altman
Detroit, Michigan           KIMBERLY G. ALTMAN
         United States Magistrate Judge


**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

16

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 22, 2022.

s/Carolyn Ciesla<br>
CAROLYN CIESLA<br>
Case Manager