UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

      Plaintiff,

v.

      Case No. 2:22-cv-10060
      District Judge Gershwin A. Drain
      Magistrate Judge Kimberly G. Altman

SIRENNA LANDFAIR, ALINDA
FLORECK, VICTORIA HALLETTS,
and MDOC,

      Defendants.
_____/

## REPORT AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANT SIRENNA LANDFAIR, ALINDA FLORECK, AND
## MDOC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 74)[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983, Title II of the

Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act.  In

broad terms, plaintiff Scott Sedore (Sedore), proceeding *pro se*, alleges that he was

retaliated against after he complained about the healthcare he received while

incarcerated.  *See* ECF No. 1.  Following early motion practice, the following

---

[1] Upon review of the parties' papers, the undersigned deemed this matter
appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D.
Mich. LR 7.1(f)(1).

defendants remain: Sirena Landfair (Landfair), Alinda Florek (Florek), the Michigan Department of Corrections (MDOC), and Victoria Hallet (Hallet).[2] During the relevant period, Landfair and Florek were MDOC employees and Hallet was a Corizon employee.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 24).

Before the Court is a motion for summary judgment jointly filed by Florek, Landfair, and the MDOC (or the "MDOC defendants").[3]  (ECF No. 74).  The motion is fully briefed, (ECF Nos. 79, 82, 85, 87), and ready for consideration. For the reasons set forth below, it is RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART.  If this recommendation is adopted, then Sedore's claims under the ADA and Rehabilitation Act against Landfair and Florek in their *individual* capacities will be dismissed.  Sedore's claims against Landfair and Florek for First Amendment retaliation will remain as will Sedore's ADA and Rehabilitation Act claims against the MDOC.

---

[2] The spelling of defendants' names is consistent with their filings.

[3] The undersigned notes that Landfair and the MDOC previously moved for summary judgment on the basis of exhaustion.  (ECF No. 22).  It was recommended that the motion be denied as to them, (ECF No. 27), and this recommendation was adopted by the district court, (ECF No. 34).  Under Eastern District of Michigan Local Rule 7.1(b)(2), "[a] party must obtain leave of court to file more than one motion for summary judgment."  Landfair and the MDOC did not request leave before filing the instant motion However, the undersigned will nonetheless consider the motion on its merits.

Finally, as to Hallet, the undersigned will issue a scheduling order.

## II.      Background

### A.      The Complaint

In an earlier Report and Recommendation, the undersigned summarized the

facts from the verified complaint[4] as follows:

> The individual defendants are all health care professionals employed by either the MDOC or Corizon who work at the G. Robert Cotton Correctional Facility (JCF).  Landfair is the Health Unit Manager, Stricklin is a nursing supervisor, Florek is a registered nurse, and [Hallet] is a medical doctor.

> Sedore says that he has a long history of grieving medical care received while incarcerated [by] the MDOC and that [d]efendants were "all well aware of [his] past fight to protect [his] 8th Amendment civil rights regarding [his] 'ongoing' 'deliberate indifference' claims. . . ."

> This lawsuit arises out of an incident that happened on June 16, 2021. On that date, Landfair along with the other named defendants placed Sedore in segregation after they alleged Sedore was harming himself. Sedore says that the injury Landfair observed (a laceration on his heel) was caused when he cut himself on his wheelchair.  When Sedore learned he would be placed in segregation, he begged and pleaded with Landfair to change her mind.

> When he was first placed in segregation, [d]efendants failed to ensure that Sedore's assigned "cage" was large enough to accommodate his wheelchair.  Squeezing into the tight space and being confined in his wheelchair "caused [Sedore] debilitating pain."  After several hours in the "cage," Sedore was evaluated by a mental health professional, Dr. Jones, who determined that Sedore could be safely returned to his normal housing unit.

---

[4] "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

3

The following day, Sedore spoke to Dr. Jones about the incident.  Dr. Jones told Sedore that placing him in segregation because of a scabbed over scrape on his heel was "ridiculous."  Dr. Jones also told Sedore that his treatment appeared retaliatory.

As a result of being placed in segregation, Sedore missed his law library appointment time.  Landfair was aware Sedore had an appointment when she decided to place him in segregation.  Missing his appointment caused Sedore a week-long delay in his ability to file a lawsuit in district court.

(ECF No. 27, PageID.224-226 (internal record citations omitted)).

### B.    Record Evidence

The MDOC defendants attached three exhibits to the instant motion: (1) excerpts of Sedore's deposition, (ECF No. 74-2); (2) Florek's affidavit along with some of Sedore's medical records, (ECF No. 74-3); and (3) Landfair's affidavit, (ECF No. 74-4).  These exhibits are summarized in turn below.

### 1.    Sedore's Deposition

At his deposition, Sedore testified that on June 16, 2021, Landfair and Florek placed him in segregation after claiming that he intentionally hurt himself. (ECF No. 74-2, PageID.755).

Sedore explained that the day earlier, he discussed his blood platelet count with Hallet.  (*Id.*).  Hallet expressed concern over Sedore's count being "very low" and asked him if he knew why.  (*Id.*).  Sedore told Hallet that he did not know, but after talking to her, Sedore reviewed some medication information he had for his

4

prescription medication called Lyrica.  (*Id.*).  The information listed low blood

platelets as a side effect of the medication.  (*Id.*).  Sedore then sent Hallet a kite

explaining what he had discovered.  (*Id.*).

On June 16, 2021, Sedore was sent to healthcare around lunchtime.  (*Id.*).

Both Landfair and Florek were at the nurses' station when Sedore arrived.  (*Id.*).

Landfair and Florek asked Sedore if he had a cut on his heel.  (*Id.*, PageID.755-

756).  Sedore told them that he had a scab on his heel and took off his sock to show

it to them.  (*Id.*, PageID.756).  Sedore then talked to Landfair and Florek for awhile

about his earlier conversation with Hallet.  (*Id.*).

Landfair and Florek also questioned Sedore about a kite he had sent

approximately a week prior about an injury on his foot that bled.  (*Id.*, PageID.756-

757).  They expressed their belief that Sedore had tried to harm himself, but Sedore

attempted to explain to them that this was not true.  (*Id.*).  Sedore also informed

Landfair and Florek that he needed to leave for his law library appointment and

that they were holding him up.  (*Id.*, PageID.758).  At his law library appointment,

Sedore planned to make copies of a lawsuit he intended to file that named dozens

of healthcare staff as defendants, including both Landfair and Florek.  (*Id.*).

Sedore had told Florek about his plan to file a lawsuit "several times" before.  (*Id.*).

Between fifteen to twenty-five minutes after Sedore's arrival, Landfair left.

(*Id.*, PageID.756-757).  Approximately five to ten minutes later, a corrections

5

office came to healthcare, handcuffed Sedore, and took him to segregation. (*Id.*).

Sedore was not told what was going on or why he was being placed in segregation.

(*Id.*, PageID.756). The segregation cell was barely big enough to fit Sedore's

wheelchair and Sedore was unable to move in the cell. (*Id.*, PageID.757).

A couple of hours later, Alison Jones, Ph.D. (Dr. Jones) came to talk to

Sedore. (*Id.*, PageID.755). She expressed that it was "ridiculous" that Sedore

"was put in segregation for a scab the size of a pencil eraser on [his] heel, [and]

that nobody she's ever heard of has tried to harm themselves that way." (*Id.*). Dr.

Jones had Sedore released from segregation. (*Id.*, PageID.757).

When asked if he wrote in a kite that " 'he cut himself and bled for four or

five hours and did not tell anyone[,]' " Sedore explained that he actually wrote that

he scraped his heel on his wheelchair causing him to bleed. (*Id.*, PageID.756).

Sedore provided this information to healthcare because he thought there was a

connection between Lyrica his low platelet count and excessively bleeding after a

minor injury. (*Id.*). Notably, there is no kite from Sedore in the record before the

Court that says he cut himself and bled for hours without telling anyone.

### 2. Florek's Affidavit and the Attached Medical Records

#### a. Affidavit

Florek is a registered nurse for the MDOC. (ECF No. 74-3, PageID.761).

She explained that "[o]n June 16, 2021, health care received a kite from Sedore

6

where he stated he had cut himself, bled for 4-5 hours, and did not tell anyone."

(*Id.*).  After assessing Sedore, Florek had him "placed in protective custody

because of his self-injurious behavior as a precautionary measure."  (*Id.*).  Her

"motivation . . . was to act in the best interests of Sedore's health, not in retaliation

for kites, grievances, and lawsuits he may have filed that were unknown to [her]."

(*Id.*).

b.    Medical Records

Hallet summarized her June 15, 2021 telephone call with Sedore as follows:

[Sedore] called for follow up for musculoskeletal/neurologic pain
control and constipation.  Notes reviewed regarding Lyrica, [Sedore]
stated unable to tolerate per notes of other provider.

[Sedore] has [been] prescribed: Naproxen 500 mg BID, Tylenol 325
mg 1-2 PO TID, Duloxetine 30 mg qd.  Was on Lyrica 75 mg daily.  He
states that he is not taking any of these because they do not help.  He
states that the Lyrica caused him to have spasms and he felt like he was
going to pass out.  He further stated that the only thing that worked for
his pain are narcotics and that in the world he was on Fentanyl, Ultram
and Norco.  He further stated that he knew that the above regime would
not work for pain.  He inquired as to his shoes, cardiology appointment
follow ups [Both of which are in place and pending].  He was told that
the best I can do is to resubmit to the PMC which is done.  Magnesium
Oxide for spasm was discussed.  He states that he is taking his
multivitamin.  Labs were reviewed with [Sedore].  Attention to platelets
at 102 on 5-19-2021 noted.  Labs to be repeated.  [Sedore] states that
he isn't taking Milk of Magnesia.  Last Vitamin D level was 70.
[Sedore's] sleep apnea machine reviewed again with him in that he has
not used it for more than some 4 days total over several years.  Please
see prior notes.

He also let it be known that he is suing a plethora of individuals.

(ECF No. 74-3, PageID.837).

In a June 16, 2021 nursing note, Florek wrote:

[Sedore] seen in clinic after being called out for a kite he had written regarding bleeding and platelet count that he states he was called via the telephone by provider Hallett [sic]. [Sedore] was then placed in segregation unit after he had wrote on the kite paperwork that he cut himself and bled for 4-5 hrs and did not tell anyone. A psych referral was completed and an assessment was asked to be done by mental health. [Sedore] states he is having bleeding concerns due to a medication he is currently on. A provider referral is also being done to address the medication concern. [Sedore] was taken by custody to segregation unit in NAD with no SOB indicated.

(*Id.*, PageID.833). Additionally, a June 16, 2021 kite response completed by

Florek states, in relevant part:

**Request Summary:**    Please see kite dated 6/14/21 regarding platelet count and cutting self.

**Plan/Action:**    [Sedore] placed in segregation unit with a psych referral completed for self-injurious behavior.

(*Id.*, PageID.922). As previously noted, the kite itself was not submitted into the

record.

### 3.    Landfair's Affidavit

Landfair submitted an affidavit, (ECF No. 74-4), with the instant motion for

summary judgment and an amended affidavit, (ECF No. 82-1), with the reply in

support of the motion. The only change between the two affidavits was the

deletion of paragraph six in the amended affidavit. The original affidavit stated:

6.    I deny any knowledge of Sedore's kites, grievances, and

8

knowledge of this, or any, lawsuit Sedore filed or was going to file prior
to assigning Sedore's care to RN Florek on June 16, 2021.

(ECF No. 74-4, PageID.1025).

Landfair is a registered nurse and is employed by the MDOC as a health unit

manager. (ECF No. 74-4, PageID.1024). She explained that "[o]n June 16, 2021,

health care received a kite from Sedore where he stated he had cut himself, bled for

4-5 hours, and did not tell anyone." (*Id.*). After reviewing the kite, Landfair

assigned Sedore's care to Florek. (*Id.*). Landfair "had no direct involvement in

Sedore's health care treatment on June 16, 2021. (*Id.*).

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley

Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2)

9

(providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Sedore is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.    Discussion

Defendants make five overarching arguments in their motion for summary judgment.  First, Landfair argues that Sedore's claims against her should be dismissed because she was not personally involved in his medical care.  Second, Florek argues that Sedore has failed to establish the requisite elements of his First Amendment retaliation claim against her.  Third, Landfair and Florek argue that

10

Sedore's ADA and Rehabilitation Act claims against them should be dismissed

because such claims cannot be maintained against defendants in their individual

capacities.  Fourth, the MDOC argues that Sedore's ADA and Rehabilitation Act

claims should be summarily denied because Sedore has failed to show he is

disabled and also that he was excluded from an MDOC service, program, or

activity.  Fifth, Landfair and Florek argue that they are entitled to qualified

immunity because they did not violate any of Sedore's clearly established

constitutional rights.  Each argument will be addressed in turn below.

### A.    Landfair's Personal Involvement

Landfair argues that she is entitled to summary judgment on Sedore's claims

because there is no genuine issue of fact that she was not personally involved in his

medical care.  The undersigned disagrees.

Under § 1983, a plaintiff must "allege that the defendants were personally

involved in or responsible for the alleged deprivation of his federal rights."

*Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 368 (6th Cir. 2004) (citing *Rizzo v.*

*Goode*, 423 U.S. 362, 373-377 (1976) and *Hall v. United States*, 704 F.2d 246, 251

(6th Cir. 1983)); *see also Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002)

("[A] complaint must allege that the defendants were personally involved in the

alleged deprivation of federal rights.").

Landfair asserts that her "only involvement with this case was reviewing

11

Sedore's health care kite and assigning Sedore's care to RN Florek." (ECF No. 74, PageID.737). Sedore, however, testified at his deposition that both Landfair and Florek were at the nurses' station when he arrived at healthcare on June 16, 2021, both questioned him about his kite and the injury on his heel, and he informed both that he had not harmed himself and that he needed to get to a law library appointment. (ECF No. 74-2, PageID.755-758). Sedore further testified that Landfair was the one who asked a corrections officer to place him in segregation. (*Id.*, PageID.756-757).

Sedore's deposition testimony directly contradicts Landfair's assertions in her affidavit that she was not personally involved in his medical treatment or the events of June 16, 2021. This is a factual dispute between two individuals that cannot be resolved when deciding a motion for summary judgment. Instead, this factual dispute is a triable issue appropriately left for a factfinder. As such, Landfair is not entitled to summary judgment on this ground.

### B.     Florek and First Amendment Retaliation

Florek[5] argues that Sedore has failed to establish the requisite elements of his First Amendment retaliation claim against her sufficient to survive summary judgment. The undersigned disagrees.

### 1.     Standard

---

[5] Landfair did not assert this argument.

12

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

## 2.    Analysis

### a.    Element One – Protected Conduct

Florek argues that Sedore has failed to establish he engaged in protected conduct as a matter of law because the lawsuit he references was not filed until *after* his short stint in segregation.  This argument misses the mark.

Sedore asserted in his verified complaint that defendants were aware of his history of filing grievances and that their actions caused him a one-week delay in filing a federal lawsuit.  He does not claim that they retaliated against him because of a lawsuit that he had already filed.

13

Courts have found that similar actions constitute protected conduct.  For example, in *Atkins v. Myers*, the district court found that a prisoner-plaintiff who "threatened to file grievances and lawsuits" had "sufficiently alleged that he engaged in protected conduct." No. 2:23-cv-114, 2023 WL 5925622, at *5 (W.D. Mich. Sept. 12, 2023); *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity).  As such, Sedore's filing of grievances and threats to file a lawsuit are protected activity for the purposes of a retaliation claim.

### b.  Element Two – Adverse Action

Florek concedes that under Sixth Circuit precedent, placing a prisoner in segregation constitutes an adverse action.

### c.  Element Three – Causation

Florek next argues that Sedore cannot establish causation because her "actions were [not] caused by the specific intent to retaliate because of his protected conduct."  (ECF No. 74, PageID.740).

### i.  Standard

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured."  *Coleman v. Mohlman*, No.

14

2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id.*, 2020 WL 5648352, at *6 (citing *Nieves*, 139 S. Ct. at 1722).

" '[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action.' " *Hamilton v. Starcom Mediavest, Inc*., 522 F.3d 623, 628 (6th Cir. 2008) (quoting *Thaddeus-X*, 175 F.3d at 387 n.3). That said, the Sixth Circuit has explained that their "cases leave no doubt that this causation element (unlike the protected-speech element) presents a pure fact question about the reason(s) for the adverse action." *DeCrane v. Eckart*, 12 F.4th 586, 602 (6th Cir. 2021); *see also Fakhoury v. O'Reilly*, 837 F. App'x 333, 340 (6th Cir. 2020) (explaining that whether a plaintiff can establish an adverse action or causation "are ordinarily factual questions for a jury"). The Sixth Circuit has also acknowledged that "[m]otive is often very difficult to prove with direct evidence in retaliation cases" and that "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).

Even if a plaintiff establishes a prima facie case of retaliation, a defendant is

15

still entitled to summary judgment if she demonstrates that she "would have taken the same action even without the protected activity." *Thomas v. Eby*, 481 F.3d 434, 441-442 (6th Cir. 2007). "[B]are allegations of malice" are insufficient to establish such a constitutional claim. *Thaddeus-X*, 175 F.3d at 399.

ii.   Application

Here, Florek focuses her argument on the defense of having a nonretaliatory motive. Specifically, she says that even if she "*had* known that Sedore had filed kites, grievances, and was going to file this lawsuit or had filed any other lawsuits (which she did not), she still would have placed him in protective custody because she did so out of concern for his health and welfare, not out of any retaliatory motivation." (ECF No. 74, PageID.741 (emphasis in original)). This argument does not carry the day.

While being legitimately concerned about a prisoner self-harming is certainly a nonretaliatory motive for placing him in segregation, there is a genuine issue of material fact here as to whether Florek had such a legitimate concern. As noted above, the kite Sedore is alleged to have sent that was interpreted as being about self-injurious behavior was not submitted to the Court. Instead, only summaries of the kite were submitted. Further, Sedore alleged in his complaint and testified at his deposition that he did not engage in such behavior and told Florek as much. Sedore's quick release from segregation after speaking to Dr.

Jones lends some support to his position that Florek's actions were not motivated out of legitimate concern for his safety.  Ultimately, as the Sixth Circuit has explained "[m]otive is often very difficult to prove with direct evidence in retaliation cases," meaning "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King*, 680 F.3d at 695.  Here, Sedore has presented circumstantial evidence sufficient to survive summary judgment on the issue of causation.  Therefore, Florek's motion for summary judgment on Sedore's First Amendment retaliation claim should be denied because he has established a prima facie case and Florek's defense of a nonretaliatory motive is complicated by factual disputes.

## C.     ADA and Rehabilitation Act Claims

Landfair and Florek argue that Sedore's ADA and Rehabilitation Act claims against them should be dismissed because such claims cannot be maintained against defendants in their individual capacities.  Further, the MDOC argues that Sedore's ADA and Rehabilitation Act claims should be summarily denied because Sedore has failed to show he is disabled and also that he was excluded from an MDOC service, program, or activity.  The undersigned agrees that Sedore's claims under the ADA and Rehabilitation Act against Landfair and Florek in their individual capacities should be dismissed but recommends that his claims against

the MDOC survive summary judgment.

### 1. Individual Capacities

It appears that Sedore asserts his ADA and Rehabilitation Act claims against Landfair and Florek in both their individual and official capacities.  However, a plaintiff "may not maintain an action under the ADA against individual defendants in their individual capacities."  *Sebestyen v. Gardner*, 2:17-cv-550, 2021 WL 1909696, at *3 (S.D. Ohio May 12, 2021), *report and recommendation adopted*, 2021 WL 2562240 (S.D. Ohio June 23, 2021).  The same is true under the Rehabilitation Act.  *See, e.g.*, *Middlebrooks v. Helton*, No. 3:23-cv-00054, 2023 WL 4002470, at *10 (M.D. Tenn. June 14, 2023)  This is because "the ADA does not provide for personal liability for defendants sued in their individual capacities." *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007).  Instead, "Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section 12132."  *Middlebrooks*, at *10.  Similarly, the Rehabilitation Act "does not impose liability upon individuals."  *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004).  Accordingly, Landfair and Florek are entitled to summary judgment on Sedore's claims against them in their *individual* capacities under the ADA and Rehabilitation Act.

### 2. Official Capacities and MDOC

Sedore's claims against Landfair and Florek in their official capacities as

well as his claims against the MDOC are all construed as claims against the

MDOC for violations of the ADA and Rehabilitation Act.  *See Middlebrooks*, at

*10 ("[T]he proper defendant to a suit under Title II of the ADA is the public

entity or an official acting in his or her official capacity.").

a.    Standard

"Title II of the ADA provides that 'no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity.' "  *Wilson v. Gregory*, 3 F.4th 844,

859 (6th Cir. 2021) (quoting 42 U.S.C. § 12132).  "Two types of claims are

cognizable under Title II: claims for intentional discrimination and claims for a

reasonable accommodation."  *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir.

2017).  Further, "[t]he ADA and the Rehabilitation Act in this circuit share the

same substantive standard."  *G.S. by & through Schwaigert v. Lee*, 558 F. Supp.

601, 611 (W.D. Tenn. 2021) (internal quotation marks and citations omitted).

"Thus, the court reviews claims under the Rehabilitation Act as though they were

brought under the ADA."  *Id.*

Sedore's claims are for reasonable accommodation.  To succeed on his

claims, he must show that: "(1) he has a disability; (2) he is a 'qualified

individual'; and (3) he was 'being excluded from participation in, denied the

19

benefits of, or subjected to discrimination under the program because of' his

disability." *Middlebrooks*, at *10 (quoting *Anderson v. City of Blue Ash*, 798 F.3d

338, 357 (6th Cir. 2015)).

b.   Analysis

i.   Element One – Disability

Defendants first argue that Sedore has failed to show he is disabled under the

ADA.  Specifically, they argue that while "Sedore claims to be in chronic pain

from injuries sustained from a car accident, has the ability to stand or walk, but,

regardless, uses a wheelchair[,]" he "has not shown that he necessarily has a

qualifying disability[.]"  (ECF No. 74, PageID.745).

The following standard applies when determining whether a plaintiff has a

disability under the ADA:

> The ADA defines a disability as a physical or mental impairment that
> substantially limits one or more of the major life activities of the
> individual.   According to the ADA regulations, an individual is
> "substantially limited" in performing a major life activity if he is either:
> (1) unable to perform a major life activity that the average person in the
> general population can perform (*e.g.*, walking), or (2) significantly
> restricted as to the condition, manner, or duration under which she can
> perform a particular major life activity as compared to the condition,
> manner, or duration under which the average person in the general
> population can perform that same major life activity (*e.g.*, being able to
> walk only for brief periods of time).   29 C.F.R. § 1630.2(j)(1)(i)-(ii).

*Middlebrooks*, at *10.  The example used in *Middlebrooks* of walking is analogous

to this case.  As Sedore alleges in the verified complaint, he uses a wheelchair

20

because he is significantly restricted in his ability to walk.  Sedore's significant

restriction in a major life activity meets the definition of disability under the ADA,

even if he is sometimes able to stand and walk.  Thus, Sedore has established the

first element of an ADA claim for purposes of summary judgment.

ii.      Element Two – Qualified Individual

As for the second element, defendants argue that Sedore's claim fails

because "a segregation cell that Sedore claims did not properly accommodate his

wheelchair is not a 'service' under the ADA."  (ECF No. 74, PageID.746).

However, as will be explained below, this argument relies on a legally incorrect

understanding of the terms services, programs, and activities.

"A 'qualified individual' means 'an individual with a disability who, with or

without reasonable modifications . . . meets the essential eligibility requirements

for the receipt of services or the participation in programs or activities provided by

a public entity.' "  *Jones v. Centurion*, No. 1:22-cv-00024, 2022 WL 9495987, at

*8 (M.D. Tenn. Oct. 14, 2022) (quoting 42 U.S.C. § 12131(2)).  "The phrase

services, programs, or activities encompasses virtually everything a public entity

does."  *Anderson*, 798 F.3d at 356 (cleaned up); *see also United States v. Georgia*,

546 U.S. 151, 157 (2006) (noting that "it is quite plausible that the alleged

deliberate refusal of prison officials to accommodate [the plaintiff's] disability-

related needs in such fundamentals as mobility, hygiene, medical care, and

21

virtually all other prison programs constituted exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." (cleaned up)).

Thus, contrary to defendants' argument, a state prison's failure to confine a wheelchair bound inmate in conditions that accommodate his wheelchair is cognizable under the ADA.  *See* 28 C.F.R. § 35.133(a) (requiring public entities to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities" as provided for by the ADA or the regulations implementing the ADA); *see also Kutrip v. City of St. Louis*, 329 F. App'x 683 (8th Cir. 2009) (denying summary judgment where facts issue remained on ADA claim regarding jail officials' denial of disabled-accessible shower and shower chair to obviously disabled inmate); *Doker v. Montgomery Cnty. Jail*, No. 3:17-cv-00947, 2017 WL 3172745, at *3 (M.D. Tenn. July 26, 2017) (on initial review under PLRA, finding a colorable ADA claim against the county based on inmate's confinement to cell not equipped to meet his needs while he was confined to a wheelchair); *Schmidt v. Odell*, 64 F. Supp. 2d 1014, 1032 (D. Kan. 1999) (denying summary judgment on inmate's ADA claim against jail where plaintiff, a double amputee, was not provided a wheelchair and had to crawl and push himself about the jail on the floor; "The fact the plaintiff was actually able to use most of the jail services does not preclude his

22

claim in light of the fact that he was able to do so only by virtue of exceptional and painful exertion which was contrary to physician's instructions concerning his disability."); *Christy v. Lindamood*, No. 1:18–cv–00008, 2018 WL 1907447, at *10 (M.D. Tenn. Apr. 23, 2018) (collecting cases); *Kirby v. Mayes*, No. 3:17-cv-01027, 2017 WL 4765348, at *4 (M.D. Tenn. Oct. 20, 2017) (collecting cases). Therefore, Sedore has established the second element of an ADA claim sufficient to survive summary judgment.

### iii.    Element Three – Causation

Finally, defendants do not argue that Sedore failed to establish the third element as to his claim that the segregation cell could not accommodate his wheelchair. Accordingly, Sedore's claims under the ADA and Rehabilitation Act for the MDOC's failure to confine him in a cell that could properly accommodate his wheelchair should survive summary judgment.

### D.    Qualified Immunity

Landfair and Florek's final argument is that they are entitled to qualified immunity because they did not violate any of Sedore's clearly established constitutional rights. The undersigned disagrees.

### 1.    Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

### 2. Analysis

Landfair and Florek offer only the following argument in support of their

contention that they are entitled to qualified immunity:

> For the reasons stated in the arguments above, [Landfair and Florek] are entitled to qualified immunity.  Sedore has not demonstrated that [they] violated any clearly established constitutional right.  Thus, there can be no First Amendment violation and [Landfair and Florek] are entitled to dismissal of the claims against [them].

(ECF No. 74, PageID.750).  But, as explained above, Sedore has established the requisite elements of a First Amendment retaliation claim against Florek and Landfair only argued that she was not personally involved in his medical care. Landfair and Florek have thus waived the argument that Sedore's First Amendment rights were not clearly established at the time of the incident.  *See Frazier v. Comm'r of Soc. Sec.*, No. 19-cv-11097, 2020 WL 1856202, at *10 (E.D. Mich. Mar. 11, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."), *adopted sub nom. Frazier v. Saul*, 2020 WL 1847923 (E.D. Mich. Apr. 13, 2020).  Accordingly, neither Florek nor Landfair have demonstrated that they are entitled to qualified immunity.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that the MDOC defendants' motion for summary judgment, (ECF Nos. 74), be GRANTED IN PART and DENIED IN PART.  If this recommendation is adopted, Sedore's

claims under the ADA and Rehabilitation Act against Landfair and Florek in their *individual* capacities will be dismissed. Sedore's claims against Landfair and Florek for First Amendment retaliation will remain as will Sedore's ADA and Rehabilitation Act claims against the MDOC.

Finally, as to Hallet, the undersigned will issue a scheduling order.

Dated: December 6, 2023                     s/Kimberly G. Altman
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on December 6, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
