UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

    Plaintiff,

v.

SIRENNA LANDFAIR, ALINDA
FLORECK, VICTORIA HALLETTS,
and MDOC,

    Defendants.

_____/

Case No. 2:22-cv-10060
District Judge Gershwin A. Drain
Magistrate Judge Kimberly G. Altman

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTIONS FOR EMERGENCY INJUNCTION (ECF Nos. 103, 106)[1]

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act. Plaintiff Scott Sedore (Sedore) is suing defendants Sirena Landfair, Alinda Florek, Victoria Hallet (Hallet), and the Michigan Department of Corrections (MDOC),[2] claiming

---

[1] Motions for TROs and preliminary injunctions are dispositive, and thus the undersigned must proceed by Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). *See Cook v. St. John Hosp. & Med. Ctr.*, No. 10-10016, 2010 WL 4137524, at *1 n.1 (E.D. Mich. Aug. 3, 2010), *report and recommendation adopted*, 2010 WL 4341192 (E.D. Mich. Oct. 27, 2010).

[2] Defendants' names are spelled consistently with other filings.

1

that they retaliated against him after he complained about the healthcare he received while incarcerated. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 24).

Before the Court are Sedore's motions for an emergency injunction. (ECF No. 103, 106).[3] The MDOC, Florek, and Landfair (or, "the MDOC defendants") have jointly filed a response, (ECF No. 105), and Sedore has filed a reply, (ECF No. 109). For the reasons that follow, the undersigned RECOMMENDS that Sedore's motions be DENIED.

## II. Parties' Positions

Sedore seeks emergency injunctive relief related to the MDOC removing his long-term aide Khalil Chahine (Chahine). (ECF No. 103). Sedore believes that the timing of this removal shows that it was done in retaliation for the Court issuing rulings in his favor. (*Id.*, PageID.1210). He asserts that he needs an aid to assist him 24/7 due to his chronic medical conditions. (*Id.*, PageID.1210-1211). Sedore has had an accommodation order since in or around May 2013, providing for an in-room aide. (*Id.*, PageID.1211 (referencing ECF No. 103, PageID.1221)). Sedore believes "[t]he only possible resolution" is to reinstate Chahine as his aide. (*Id.*, PageID.1212).

---

[3] Sedore filed a second motion for emergency injunction because he believed there might have been mailing issues with the first motion. *See* ECF No. 106. Both motions seek the same relief.

The MDOC defendants do not dispute that Sedore has an accommodation entitling him to an in-room aide; however, they explain that this accommodation does not require the MDOC to provide Sedore with the aide of his choosing. (ECF No. 105, PageID.1332). The MDOC defendants also do not contest that Chahine was removed as Sedore's aide on February 8, 2024. (*Id.*). They do, however, contest that the MDOC failed to provide Sedore with a new aide. (*Id.*, PageID.1332-1333). Between February 8 and February 12, 2024, a prisoner identified as "Johnson" assisted Sedore on a temporary basis, and then, on February 12, 2024, a prisoner identified as "Keefer" was assigned to be Sedore's new aide. (*Id.*).

The MDOC defendants say that Chahine was removed as Sedore's aide due to the needs of the MDOC, and that neither Sedore nor this lawsuit had anything to do with the decision. (*Id.*, PageID.1333-1334 (citing ECF No. 105-3, PageID.1352-1355)). The MDOC explains that Chahine

> is a security [L]evel I prisoner, who was moved housing assignments based on MDOC's central office's Correctional Facilities Administration's (CFA) instruction to the JCF administration that level II beds were needed to be made available for inbound prisoners that are security classification level II from the Reception and Guidance Facility (RGC). The decision to move Chahine, was not done by nor involved the [d]efendants, Warden, or Administrative Assistant, as incorrectly alleged by Sedore. The need to make Level II beds available had no ties to Sedore's litigation.

(*Id.*, PageID.1333-1334 (internal citations omitted)).

3

In reply, Sedore says that everyone at CFA is aware of him. (ECF No. 109, PageID.1385). He also asserts that Johnson did not provide him with any assistance in the interim period between Chahine's removal and Keefer's assignment. (*Id.*).

### III. Legal Standard

It is unclear whether Sedore intended to see a temporary restraining order (TRO) or a preliminary injunction. Regardless, courts in the Sixth Circuit apply the same standard to a motion for a TRO and a motion for a preliminary injunction. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). Under that standard, the factors are whether (1) the movant has a strong likelihood of success on the merits; (2) the movant would suffer irreparable injury absent a TRO or preliminary injunction; (3) granting the TRO or preliminary injunction would cause substantial harm to others; and (4) the public interest would be served by granting the TRO or preliminary injunction. *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Moreover, "[i]njunctive relief is an extraordinary remedy and is issued cautiously and sparingly." *Enerco Grp., Inc. v. Deutsch*, No. 1:16CV213, 2016 WL 852572, at *2 (N.D. Ohio Mar. 3, 2016).

No one single factor is controlling; however, "a preliminary injunction issued where there is simply no likelihood of success on the merits must be

reversed." *Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). " '[T]he proof required for the [movant] to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion' because a preliminary injunction is an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (quoting *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000)). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *Id.* (citing *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441 (1974)).

IV. Analysis[4]

A. Likelihood of Success on the Merits

Sedore is essentially alleging that he is being retaliated against for his success in this lawsuit. " '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, ⸺ U.S. ⸺, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). A First Amendment retaliation claim has three elements:

---

[4] The MDOC defendants also argue that the instant motion for injunctive relief is improper because it rests on allegations not raised in the complaint. (ECF No. 105, PageID.1334-1336). While this argument may be well-taken, the undersigned believes the better course is to address the merits of Sedore's request for an injunction.

5

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). For the purposes of this motion, the undersigned will assume that Sedore has established the first two elements.

As for the third element, "to prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id.* at *6 (citing *Nieves*, 139 S. Ct. at 1722).

Here, the MDOC defendants have provided emails showing that a number of prisoners needed to be moved from Level II to Level I in order to make room for an influx of prisoners who needed to be housed in Level II cells. (ECF No. 105-3, PageID.1352-1355). They have also provided an email chain showing that the classification director at JCF began working on finding a new aide for Sedore on

6

February 8, 2024, which appears to have been the day that he was informed about Chahine's relocation. (ECF No. 105-2, PageID.1347-1350). Based on these emails, it appears that the MDOC had more Level II prisoners than it had beds given how many Level I prisoners were being housed in Level II such as Chahine. Chahine was not the only prisoner affected, and the classification director immediately began working on finding Sedore a qualified aide once he was informed of Chahine's relocation.

Under these circumstances, the record does not show that anyone acted with a retaliatory motive toward Sedore, let alone that such a retaliatory motive was a but-for cause to the adverse action. Thus, Sedore has failed to establish a likelihood of success on the merits on his request for injunctive relief.

B.   Irreparable Injury

While Sedore disputes that Johnson provided him with any interim assistance, he does not appear to dispute that Keefer was assigned to be his aide on February 12, 2024. The undersigned is sympathetic to the fact that Sedore must now adapt to a new aide even though he appears to have been comfortable with Chahine and likely built a strong rapport with him during the over four-year period during which Chahine served as Sedore's aide. However, Keefer is "bloodborne pathogen trained and PREA no score," meaning he is qualified to be Sedore's aide and provide him with the assistance that he needs. (ECF No. 105-2, PageID.1347-

7

1348). Given that the MDOC has assigned Sedore a qualified aide to replace Chahine, Sedore has not established that he will suffer irreparable harm in Chahine's absence sufficient to warrant injunctive relief.

C.  Third-Party and Public Interests

As for the other factors, "the interests of identifiable third parties and the public at large weigh against an injunction" in the prison setting. *Theriot v. Woods*, No. 2:18-CV-92, 2019 WL 409507, at *11 (W.D. Mich. Feb. 1, 2019). "Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive." *Id.* "The public welfare therefore militates against the issuance of extraordinary relief [of injunctive action] in the prison context, absent a sufficient showing of a violation of constitutional rights." *Id.* (citing *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988)); *see also Lane v. Beavers*, No. 2:19-CV-1793, 2019 WL 3521652, at *6 (S.D. Ohio Aug. 2, 2019) (explaining that "enjoining prison officials from moving [the p]laintiff to segregation and keeping him out of plain view from other inmates would undoubtedly remove from prison officials the deference that they are generally afforded in the administration and control of the prison" (internal citation omitted)), *report and recommendation adopted*, 2019 WL 6877851 (S.D. Ohio Dec. 17, 2019).

Granting Sedore the relief requested in this case would violate the general principle of avoiding federal court interference in the administration of state prisons. The need to open up Level II beds for incoming Level II prisoners is precisely the kind of decision on which federal courts defer to the expertise of prison officials. Thus, Sedore has failed to establish elements three and four sufficient to warrant injunctive relief.

V.  Conclusion

Overall, for the reasons set forth above, none of the factors weigh in favor of granting Sedore the extraordinary form of injunctive relief he requests. Accordingly, undersigned RECOMMENDS that Sedore's motions for an emergency injunction, (ECF No. 103, 106), be DENIED.

Dated: March 27, 2024                                s/Kimberly G. Altman
Detroit, Michigan                                    KIMBERLY G. ALTMAN
                                                     United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

9

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
