UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

          Plaintiff,

Case No.: 2:22-cv-10060
Hon. Gershwin A. Drain

v.

SIRENNA LANDFAIR, *et al.*,

          Defendants.

_____/

## ORDER GRANTING DEFENDANT VICTORIA HALLETTS' ORAL RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

### I. INTRODUCTION

The instant 42 U.S.C. § 1983 action commenced trial on March 18, 2025. On March 20, 2025, after the Plaintiff concluded his case-in-chief, Defendant Victoria Halletts, D.O., orally moved for Judgment as a Matter of Law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Defendant Halletts argued she is entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim because Plaintiff has failed to establish any causal connection between

Defendant Halletts' acts and the adverse action taken against Plaintiff. For the reasons that follow, the Court grants Defendant Halletts' Rule 50(a) Motion for Judgment as a Matter of Law.

## II. LAW & ANALYSIS

To prove a First Amendment retaliation claim, Plaintiff must establish that (1) he "engaged in protected conduct," (2) "an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law in a jury trial. Once a party has been fully heard on an issue during a jury trial, the opposing party may move for judgment as a matter of law on that issue before the court submits the case to the jury. Fed. R. Civ. P. 50(a). The moving party must show that "a reasonable jury would not have a legally sufficient basis to find for the [nonmoving] party on that issue[.]" *Id*. When considering a Rule 50(a) motion, the trial court does not weigh the evidence or make

credibility determinations. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). The court must view the evidence presented at trial in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences. *See Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1328 (6th Cir. 1992). The court may grant a Rule 50(a) motion "whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson*, 191 F.3d at 657 (citations omitted).

The Court finds that, even when all reasonable inferences are drawn in favor of Plaintiff, Defendant Halletts' argument on the absence of causal connection entitles her to judgment as a matter of law. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). "[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims." *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001). Nor are "[c]onclusory

allegations of temporal proximity sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

The evidence at trial was that Plaintiff is a prisoner with the Michigan Department of Corrections and currently resides at the G. Robert Cotton Correctional Facility in Jackson, Michigan. Prior to his incarceration, Plaintiff was in a car accident. As a result, Plaintiff is wheelchair bound and he suffers from chronic pain. At G. Robert Cotton, Plaintiff is known as someone who files grievances and lawsuits against prison staff.

The MDOC has a policy on "suicidal and self-injurious behavior." *See* Defs.' Ex. I, PD 04.06.115. MDOC policy directive 04.06.115 states that,"[i]f a prisoner engages in suicidal behavior which does not require medical treatment, or threatens to engage in suicidal or self-injurious behavior, the prisoner shall promptly be placed on unrestricted face-to-face visual observation in an observation room and referred to a QMHP or QHP for a mental health evaluation, using the Mental Health Services Referral Form[,]" commonly referred to as a Roberta R form. A QMHP is a qualified mental health professional.

The events giving rise to this action occurred at the G. Robert Cotton Correctional Facility on June 15, 2021. On that date, Defendant Halletts called Plaintiff for follow up on musculoskeletal/neurologic pain control. Defs.' Ex. A. During the call, Plaintiff informed Dr. Halletts that none of the medications she had prescribed—Lyrica, Naproxen, Tylenol, and Duloxetine were working so he stopped taking the medication. Plaintiff was not happy about the healthcare he had been receiving and informed Dr. Halletts that he was going to be "suing a plethora of individuals." Dr. Halletts noted this in Plaintiff's medical record. *Id.* Dr. Halletts also discussed Plaintiff's recent lab results, which revealed that his blood platelets were low. She asked him if he had any explanation for the change. Plaintiff did not.

Dr. Halletts testified that she noted Plaintiff was going "to sue a plethora of individuals" in his medical record because that is what he said to her, as well as in an effort to document Plaintiff's agitation concerning his perceived lack of adequate medical care. Dr. Halletts denied that she included Plaintiff's statement in his medical record to retaliate against him or in the hope that other medical staff would read the note and retaliate against him.

After the conversation with Defendant Halletts, Plaintiff reviewed the medical insert accompanying the Lyrica medication. He thought perhaps the Lyrica had something to do with the changes to his blood platelet count. He wrote a medical kite inquiring about this. On page three of the kite, Plaintiff noted that he "cut [him]self and bled for 4-5 hours all over my bed." Defs.' Ex. D.

On June 16, 2021, the nursing supervisor, Brian Stricklin, reviewed Plaintiff's kite. Mr. Stricklin became concerned that Plaintiff may have engaged in self-injurious behavior based on his statement that he "cut himself and bled for 4-5 hours." Stricklin determined that Plaintiff needed to be called out from his cell so that a QMHP could evaluate him for potential suicidal behavior.

Stricklin took Plaintiff's kite to either Defendant Sirenna Landfair or Defendant Alinda Florek and directed that a Roberta R form be prepared so Plaintiff could be referred to a QMHP. Stricklin did not read Plaintiff's medical records before asking the nursing staff to follow up with a Roberta R and QMHP referral. Nor did Stricklin have any discussions with Dr. Halletts before making his decision. Stricklin denies seeing Dr. Halletts' note in Plaintiff's medical records from the

6

day before. Dr. Halletts also testified that she did not speak to anyone from the MDOC nursing staff regarding her call with Plaintiff or her medical notes from the day before.

After Defendant Florek prepared the Roberta R form, she called an officer on the custody team to transport Plaintiff to an observation cell so that a QMHP could evaluate him. Plaintiff informed Florek that he had gotten a cut to his foot about a week prior from not wearing any socks with his shoes. Plaintiff vigorously denied that he had tried to harm himself; however, he was still referred to a QMHP and placed in an observation cell until he could be evaluated.

Plaintiff testified that the observation cell he was placed in was too small to accommodate his wheelchair and that there were larger observation cells that could have been used. Dr. Allison Jones, a psychologist, was the QMHP called to evaluate the Plaintiff. After interviewing the Plaintiff while he was in the observation cell, Dr. Jones came to the conclusion that Plaintiff was not a danger to himself and could be released into the general population. Plaintiff spent nearly two hours in the observation cell. Plaintiff asserts that being placed in a cell that was too small to accommodate his wheelchair

7

exacerbated his chronic pain. Plaintiff testified that he did not see Dr. Halletts on June 16, 2021, and that he has no knowledge of her speaking to the nursing staff about his statement the previous day. Plaintiff admitted his belief that Defendants Landfair and Florek saw Defendant Halletts' note about plaintiff intending to "sue a plethora of individuals" was just an assumption based on Landfair and Florek whispering among themselves at the nurse's station.

    Based on this evidence, Brian Stricklin was the decisionmaker who determined that Plaintiff needed a referral to a QMHP and placement in an observation cell. There is no evidence that Dr. Halletts was involved in this decision in any manner. Stricklin did not review Plaintiff's medical records before making this determination. Stricklin's decision was based solely upon Plaintiff's kite, and not on any action taken by Dr. Halletts. Thus, Plaintiff cannot show that the adverse harm he suffered was motivated by his protected conduct. There is no causal connection between Dr. Halletts' medical note indicating Plaintiff's plan to "sue a plethora of individuals" and Stricklin's decision to refer Plaintiff to a QMHP for an evaluation. As such, Plaintiff cannot

establish the elements of his First Amendment claim against Defendant Halletts and she is entitled to judgment as a matter of law.

## III. CONCLUSION

Accordingly, for the reasons articulated above, Defendant Victoria Halletts' oral Motion for Judgment as a Matter of Law pursuant to Rule 50(a) is GRANTED.

SO ORDERED.

Dated: March 26, 2025          /s/Gershwin A. Drain
                               GERSHWIN A. DRAIN
                               United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 26, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager